IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MYLES HARRIS, | § | |
| | § | No. 324, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID Nos. 1702016968 (N) |
| STATE OF DELAWARE, | § | 1703019702A |
| | § | 1703019702B |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 7, 2018
Decided: February 5, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1)    In 2017, as part of a drug investigation, members of the Wilmington Police Department conducted surveillance of a condominium unit at 110 Towne Estate Drive where the appellant, Myles Harris, lived with his brother.  On February 23, 2017, Detective Alexis Schupp observed Harris leave the residence and drive to Chestnut Street where he engaged in what appeared to be a hand-to-hand drug transaction with Angela Wagner.  After the transaction, Detective Schupp followed Harris and pulled him over in the parking lot of the Adams Four Shopping Center.

Detective Schupp removed Harris from the vehicle and placed him in handcuffs. Detective Schupp then found what appeared to be several "logs" of heroin[1] on the driver's seat of Harris' vehicle and three cell phones and $225 cash in the vehicle's center console.

(2) Detective Danielle Farrell followed Wagner as she proceeded on foot after her meeting with Harris. Detective Farrell approached Wagner and asked if she had any drugs on her. Wagner indicated that she did and removed what appeared to be a log of heroin from her bra.

(3) Following their interactions with Harris and Wagner on February 23, Detectives Schupp and Farrell joined other officers in a search of Harris' condominium unit. The two Detectives also participated in a second search of the unit on March 27. In the February 23 search, the police recovered what appeared to be several logs of heroin that were hidden behind an air-conditioning unit in a balcony on the first floor. And in a second floor bedroom, the police recovered personal paperwork belonging to Harris (including his birth certificate and a Delmarva Power bill in his name, at the condominium unit's address), a digital scale, plastic sandwich bags, and a large amount of money hidden in several shoeboxes and a Tide pods container. In the March 27 search, the police recovered another

---

[1] A log typically contains between 120 and 130 small bags of heroin.

shoebox of cash from the same second floor bedroom and what appeared to be several logs of heroin, several grams of cocaine, and a loaded handgun that were hidden in a vent behind the stove and microwave in the kitchen.

(4)     Harris and his brother were jointly indicted and tried before a jury for a number of drug and gun-related offenses and on charges of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited. The person-prohibited charges were severed from the drug and gun-related charges.

(5)     On January 12, 2018, at the end of a four-day trial, the jury convicted Harris of two counts of Drug Dealing Tier 4, one count of Drug Dealing Tier 2 with an Aggravating Factor, two counts of Drug Dealing, two counts of Possession of Drug Paraphernalia, and one count each of Possession of a Firearm during the Commission of a Felony and Possession of a Weapon with an Obliterated Serial Number.[2] The jury acquitted Harris' brother. After the verdict, Harris was tried before the same jury on the person-prohibited charges and was convicted.

(6)     Harris was sentenced to a total of nine years of Level V incarceration for the drug and gun-related offenses. For his person-prohibited convictions, Harris was sentenced to a total of ten years of Level V incarceration suspended for eight

---

[2] At the close of the State's case-in-chief, the trial judge dismissed the conspiracy charges.

3

years of Level IV supervision suspended after six months for Level III probation. This is Harris' direct appeal.

(7) In the Rule 26(c) brief and motion to withdraw, Harris' trial counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Harris has supplemented the brief with claims he would like us to consider on appeal. The State has responded to the position taken by Harris' trial counsel, the claims raised by Harris, and has moved to affirm the Superior Court's judgment.

(8) When considering a Rule 26(c) brief and motion to withdraw, our standard and scope of review is twofold.[3] First, we must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal.[4] Second, we must conduct our own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[5]

(9) In his written submission on appeal, Harris claims that he was convicted on the basis of insufficient evidence. He argues that Wagner's trial testimony lacked

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[4] *Penson v. Ohio*, 488 U.S. at 83.
[5] *Id.*

4

credibility and that an "officer" —Harris does not identify which officer— "switched [his or her] story multiple times on the stand."  Harris argues that there was insufficient evidence to convict him of the two weapon possession charges— Possession of a Deadly Weapon During the Commission of a Felony and Possession of a Weapon with an Obliterated Serial Number—because there was no physical evidence linking him to the gun that was seized on March 27.  And he further argues that the State could not prove beyond a reasonable doubt that he possessed any of the contraband seized from the condominium unit because, as was proven at trial, other people also lived in the unit.

(10)  We review a sufficiency of evidence claim *de novo*, to determine "whether the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt."[6]  For the purposes of this inquiry, we do not distinguish between direct and circumstantial evidence.[7]  Also, we recognize that it is the "sole province of the fact finder"—in this case the jury—"to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[8]

(11)  The evidence at trial supporting the drug and gun-related offenses included the testimony of:  (i) Wagner, who testified that she bought heroin from

---

[6] *Carter v. State*, 933 A.2d 774, 777 (Del. 2007).
[7] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).
[8] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

5

Harris on February 23; (ii) Detectives Schupp and Farrell, who described their respective encounters with Wagner and Harris on February 23 and testified about the contraband and other items seized on February 23 and March 27; (iii) Corporal Hugh Stephey, a crime scene investigator, who testified about his forensic examination of the gun; (iv) Dena Lientz, a forensic analytical chemist, who testified about her chemical analysis of the drugs; (v) Bethany Kleiser, a forensic DNA analyst, who testified about her analysis of gun swabs and buccal samples; (vi) Kyle Brown, a forensic chemist, who testified about his chemical analysis of the drugs; and (vii) Detective Peter Stewart, who gave an expert opinion on whether Harris and his brother possessed the drugs with an intent to deliver or merely for personal use. The evidence at trial supporting the person-prohibited charges consisted of a document containing Harris' criminal history and Detective Schupp's testimony that the criminal history included a felony conviction, which prohibited Harris from possessing a firearm and ammunition.

(12) Having reviewed the record *de novo*, we conclude that the evidence admitted at trial supports the jury's findings that Harris was guilty beyond a reasonable doubt of the drug and gun-related offenses and the person-prohibited charges. Harris' insufficient evidence claim is without merit. Moreover, having carefully reviewed the record, we conclude that Harris' appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Harris'

counsel made a conscientious effort to examine the record and the law and properly determined that Harris could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED. The Superior Court judgments are AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Justice

7